MICHAEL DEVEREUX, ESQ.

Michael S. Devereux  (SBN 225240)
9440 Santa Monica Blvd, Suite 301
Beverly Hills, California  90210
Telephone: (424) 444-0883

Attorneys for Plaintiffs, ELISHA SAMPSON and CLAYTON SAMPSON

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| ELISHA SAMPSON AND CLAYTON SAMPSON, | CASE NO.: 5:25-cv-03621-SSS-SP |
|---|---|
| Plaintiffs, <br> v. <br><br> UNITED STATES OF AMERICA, <br><br> Defendant. | PLAINTIFFS' REPLY TO GOVERNMENT'S OPPOSITION TO PLAINTIFFS EMERGENCY EX PARTE APPLICATION FOR INTERIM EQUITABLE RELIEF: EXHIBIT; DECLARATION OF MICHAEL S. DEVEREUX |

Plaintiffs Elisha Sampson and Clayton Sampson respectfully reply to the government's opposition directing the immediate return of seized property. The government in their response was inaccurate and misleading in the following:

1. Service was made in March, *See* Exhibit "A;"
2. Even if service wasn't made it is an inappropriate argument for a timing challenge;
3. There was no court extension in "January 2026," the government did not request an extension until hours before the February 6, 2026 deadline and it wasn't granted until February 13, 2026.

1

MICHAEL DEVEREUX, ESQ.

## I.    INTRODUCTION

The government's opposition confirms the central point of the June 10 application. The dispute is no longer about whether the United States had a deadline. It did.

The dispute is whether the government complied with that deadline under the statute it chose to invoke, and whether this Court may require a prompt and rational explanation for continued possession of the Sampsons' money and property after months of shifting positions.

The government now says, for the first time in this civil action, that there was a second sealed extension entered on January 13, 2026,[1] that extended the CAFRA deadline to March 13, 2026. That assertion is not true, but even it was true it does not materially change the factual picture presented in the ex parte application, because until the opposition, Plaintiffs had been told only that the operative extended deadline was February 6, 2026. Even accepting the government's new account for present purposes, the opposition still does not defeat the narrow relief requested.

It instead sharpens three points:

    1.  Service is not a merits answer to a CAFRA timing challenge;

---

[1] See docket #8, case no. 2:25-cm-00120-JLS that on February 13, 2026, extended the CAFRA deadline to March 13, 2026 more than a week after the 2/6/2026 deadline.

2. This Court retains equitable authority to require a precise showing concerning property seized from these Plaintiffs and still affecting them;

3. The government's own chronology shows why a sworn clarification order remains appropriate now.

The case should therefore move from abstraction to particulars. This case is not an academic file. It concerns Clayton and Elisha Sampson, people whose currency was seized on May 13, 2025, who timely filed CAFRA claims on July 10, 2025, and who have continued to allege concrete hardship from the government's retention of their property. Law begins with rules, but equity ends with people. The Court should keep both in view.

## II.    THE SERVICE ARGUMENT IS DUBIOUS AT BEST

The government argues that Plaintiffs were never properly served under Federal Rule of Civil Procedure 4(i)(1), and that this failure prejudiced the United States by depriving it of the full response period provided by Rule 12(a)(2).

That argument is not only a red herring, but it's dubious at best. The defendants were served. *See* Exhibit "A." Per the exhibit, the forfeiture department's certified mail certificate was returned on March 12, 2026. In addition, there is a receipt on the exhibit for service to the Attorney General's Office at 950

MICHAEL DEVEREUX, ESQ.

Pennsylvania Avenue, Washington, DC. The process server is continuously researching the last receipt for the local DOJ.

Arguendo, the service argument does not answer the relief now sought. Plaintiffs are not asking the Court to enter default, to strike a late answer, or to adjudicate damages claim because the United States missed a civil response deadline. Plaintiffs are asking the Court to address the government's ongoing retention of seized property and to require a present legal justification for that retention.

That distinction matters. Rule 41(g) proceedings and analogous equitable return-of-property proceedings do not depend for their conceptual force on the ordinary logic of service leading to answer, answer leading to merits. The Supreme Court recognized in *DiBella v. United States* that a motion solely for return of property may stand as an independent proceeding. 369 U.S. 121, 131–32 (1962). The Ninth Circuit has likewise treated motions for return of property as equitable proceedings in which the court examines possession, hardship, need, and the adequacy of legal remedies. See *Ramsden v. United State*s, 2 F.3d 322, 324–25 (9th Cir. 1993); *United States v. Martinson,* 809 F.2d 1364, 1366–69 (9th Cir. 1987).

So even if the government were correct that service was imperfect, that would not convert a statutory forfeiture issue into a non-issue. The government cannot retain property by picking a different argument. The question raised by the June 10

4

MICHAEL DEVEREUX, ESQ.

application is not whether the Sampsons flawlessly navigated service on a sovereign defendant. It is whether, after timely CAFRA claims were filed, the United States complied with the sequence that Congress required before continuing to hold the Sampsons' property.

The opposition itself underscores the point. The government was able to file a detailed merits opposition, attach declarations, identify sealed proceedings, describe the extension history, and argue jurisdiction, statutory compliance, and prejudice. That is not a party unable to understand the case. It is a party contesting the case on the merits. Whatever service defect the government alleges, it has actual notice and has now fully joined the core dispute.

## III. PLAINTIFFS' MARCH SERVICE EFFORTS FURTHER UNDERCUT ANY CLAIM OF UNFAIR SURPRISE

The record also shows that Plaintiffs did attempt service in March 2026 and then disclosed that fact in response to the Court's orders to show cause. The government acknowledges that Plaintiffs filed a proof of service on May 20, 2026 asserting service by mail on March 10, 2026, and a filing asserting service on March 12, 2026. The government's own exhibits show that, internally, its personnel were investigating whether service had occurred "back in March," and that the inquiry

MICHAEL DEVEREUX, ESQ.

focused on whether service had reached the Attorney General's office and the local office.  Apparently, it had.

That record may or may not establish perfect compliance with Rule 4(i)(1). It does establish something else of consequence: Plaintiffs were not hiding the ball, inventing service after the fact, or attempting ambush. They were trying to move a protracted property dispute into a posture where the government would respond, while the government itself was simultaneously pursuing sealed extensions and then criminal-forfeiture preservation orders concerning the same property.

If the Court concludes that Rule 4(i)(1) service remains incomplete, the ordinary remedy is to require completion or permit cure, not to treat service as a substantive defense to return-of-property relief. The Supreme Court has long favored disposition on the merits over procedural forfeiture when curative steps remain available, and courts routinely allow service defects involving the United States to be corrected where notice exists and no concrete prejudice is shown. Here, the government has shown administrative uncertainty, not an inability to respond.

## IV. THE OPPOSITION MISSTATES THE SECOND EXTENSION CHRONOLOGY

The most important merit issue remains timing under CAFRA. The government's opposition says that Judge Staton granted the second extension on January 13, 2026, and that the extension carried the deadline to March 13, 2026.

Plaintiffs now specifically dispute that account. Plaintiffs' position is that the second sealed extension was entered on February 13, 2026, not January 13, 2026.

That difference is not clerical. It is decisive. If the second extension was entered on February 13, then it was entered after the previously disclosed February 6 deadline had expired. Under Plaintiffs' reading of CAFRA and ordinary deadline principles, a sealed order entered after the lapse of the prior deadline cannot be used casually as if it had preserved continuity all along. The whole argument turns on whether there was an unbroken statutory chain.

The government tries to make the problem disappear by collapsing filing date, order date, and effective date into one smooth narrative. But that is precisely the issue the Court should not assume away.

The government says it filed a second ex parte application on February 5, 2026, hours before the expiration of the prior deadline. Plaintiffs have not been privy to the application so they cannot deny that filing. The problem is the date the extension was actually entered. If the extension order itself was not entered until February 13, 2026, then the Court should require a careful explanation of why that eight-day gap does not matter under the statute the government itself invokes.

This is where rational method matters. One begins with the known proposition: the only deadline disclosed to Plaintiffs before the opposition was February 6, 2026. One then adds the government's new proposition: a second sealed

extension existed. One then asks the indispensable question: when was that second extension actually entered? If the answer is February 13, 2026, then the government's attempt to present the chronology as seamless fails at the point where sequence matters most.

## V.    EQUITY STILL PERMITS THIS COURT TO REQUIRE A PRESENT JUSTIFICATION

The government next argues that this Court lacks equitable jurisdiction because the property is now subject to the criminal court's exclusive control. That proposition is too broad. It converts the existence of a criminal case into the extinction of all equitable authority in the civil case. The Ninth Circuit has not adopted such a rule.

In *Ramsden*, the Ninth Circuit identified factors governing whether equitable jurisdiction should be exercised over a return-of-property request, including the movant's need for the property, irreparable injury, and the absence of an adequate legal remedy. 2 F.3d at 324–25.

In *Martinson* 809 F.2d 1364 (9th Cir. 1987), the Ninth Circuit stated that when the government has no legitimate reason to retain property, return is presumed, and the burden shifts to the government to demonstrate a legitimate reason to keep it. *Id* at 1369. Additionally, in *Henderson v. United States*, the Supreme Court reaffirmed that federal courts may fashion practical relief concerning property in government

custody while still protecting lawful governmental interests. 575 U.S. 622, 628–31 (2015).

Those cases do not require the Court to order immediate return today. They do establish something important: the Court is not powerless. At minimum, it may require the government to identify with precision what property remains held, what present authority supports retention of each category of property, and what immediate process is available for the Sampsons to seek partial or complete relief.

That minimum relief is especially appropriate because money damages are not an adequate substitute. In *Ordonez v. United States*, the Ninth Circuit held that sovereign immunity bars money damages under Rule 41(g). 680 F.3d 1135, 1138–41 (9th Cir. 2012). If courts do not supervise the current retention of actual property while the government still possesses it, later remedies may amount to nothing at all.

## VI. THE COURT SHOULD TREAT THE OPPOSITION AS A REASON FOR CLARIFICATION, NOT DISMISSAL

The opposition attempts to combine two contested propositions into one dispositive conclusion. The first is dubious in that the service was defective. The second is that the government complied with CAFRA through a second sealed extension on January 13. But both propositions are disputed. The certified-mail receipts substantially undercut the first. There was no order on January 13, 2026 extending the deadline to March 13, 2026.

MICHAEL DEVEREUX, ESQ.

9

MICHAEL DEVEREUX, ESQ.

That is why the Court need not choose between all or nothing. It need not accept the government's invitation to end the case on service alone. Nor must it resolve every forfeiture issue in one emergency ruling. Instead, it may require an immediate sworn clarification of the points the opposition has made murky: when the second extension was actually entered, whether the government contends a filing before the February 6 deadline is enough even if the order was entered after that deadline, what property remains held, and what present authority supports continuing retention.

That course is not only legally sound. It is proportionate. Clayton and Elisha Sampson are the burdened parties. The law should not become so enamored of its own compartments that it forgets the object under discussion is a family's money and other property.

## VII.    CONCLUSION

The Court should reject the government's request to treat alleged service defects as dispositive because the certified-mail record substantially undermines the government's categorical no-service account. The Court should also reject the government's effort to present the second sealed CAFRA extension as if its date were settled when Plaintiffs specifically contend it was entered on February 13, 2026, after the previously disclosed February 6, 2026, deadline had expired.

10

MICHAEL DEVEREUX, ESQ.

For those reasons, Plaintiffs respectfully submit that the Court should require a prompt sworn clarification of the extension chronology and the present legal basis for continued retention of the Sampsons' property and should decline to allow disputed service assertions and a disputed sealed-order timeline to dispose of the application without further scrutiny.

Dated: June 15, 2026                          Respectfully Submitted,


By: _____
                    Michael Devereux
                    Attorney for Plaintiffs
                    Clayton Sampson
                    Elisa Sampson